## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

**VERITASEUM CAPITAL, LLC.**
30 N. Gould St. Ste. R
Sheridan Wyoming 82801

                Plaintiff,

   v.

**CIRCLE INTERNET FINANCIAL LIMITED**
70 Sir John Rogerson's Quay
Dublin 2, Dublin, Ireland
D02 R296

**CYBAVO INC.**
8F-1, No, No. 88, Yanchang Rd.,
Xinyi District, Taipei City
Taiwan 110

            Defendant.

Case No._____ 2:22-cv-498

## COMPLAINT FOR PATENT INFRINGEMENT
## AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff Veritaseum Capital, LLC (hereinafter "Veritaseum" or "Plaintiff"), by and through its counsel, Carl Brundidge and David Moore of Brundidge & Stanger, P.C., and hereby files this Complaint against Defendants Circle Internet Financial Limited (hereinafter "Circle Ltd." or "Defendant") and Cybavo Inc. (hereinafter "Cybavo") (hereinafter collectively "Circle" or "Defendants"). For its Complaint against Defendants, Plaintiff alleges as follows:

**THE PARTIES**

1.       Veritaseum Capital, LLC is a limited liability company organized and existing under the laws of the state of Wyoming, located at 30 N. Gould St. Ste. R, Sheridan Wyoming 82801.

2.       Circle Internet Financial Limited is a company organized and existing under the laws of Ireland, located at 70 Sir John Rogerson's Quay, Dublin 2, Dublin, Ireland, D02 R296

3.       Cybavo Inc. is a company organized and existing under the laws of Taiwan, located at 8F-1, No, No. 88, Yanchang Rd., Xinyi District, Taipei City Taiwan 110

**NATURE OF THE ACTION**

4.       Reginald Middleton ("Mr. Middleton") has invented novel devices, systems and methods enabling parties with little trust or no trust in each other to enter into and enforce value transfer agreements conditioned on input from or participation of a third party, over arbitrary distances, without special technical knowledge of the underlying transfer mechanism(s) and was awarded a Patent by the U.S. Patent and Trademark Office ("USPTO"), namely U.S. Patent No. 11,196,566 (hereinafter the "'566 Patent") (*see* Ex. 1).

5.       Although not the subject of this action Mr. Middleton was also awarded a patent for his invention by the Japan Patent Office ("JPO"), namely Japan Patent No.  6813477 (hereinafter the "JP '477 Patent) and was recently granted another patent based on Japanese Patent Application No. JP 2020-209670. Circle does a substantial amount of its business through its Japanese yen stable coin and various exchanges operating in Japan.

6.       Mr. Middleton has exclusively licensed all substantial rights to his patents, including the right to sue third parties for infringement of his patents, to Veritaseum Capital, LLC.

7.        This is an action for patent infringement.  Defendants are infringing the claims of the '566 Patent by making, using, selling, offering to sell and importing into the U.S. products and services

through its websites at https://www.Circle.com/ and https://www.cybavo.com, as well as other means, that infringe the claims of the '566 Patent in violation of Veritaseum's intellectual property rights. Ex. 1 which provides a copy of the '566 Patent is attached to this complaint and is incorporated herein as if fully rewritten.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 28 U.S.C. § 1338(a).

9.      This Court has personal jurisdiction over Defendants because Defendants have committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271 in this district and have placed and continues to place infringing products and services into the stream of commerce, with the knowledge or understanding that such products and services are sold in this District. Defendants have also regularly recruited and continues to regularly recruit Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

10.      Venue is proper within this District under 28 U.S.C. § 1391(c)(3), "a defendant not resident in the United States may be sued in any judicial district." Defendants are not residents of the United States, namely Circle Internet Financial Limited is a resident of Ireland and Cybavo Inc. is a resident of Taiwan.

## FACTUAL ALLEGATIONS

11.      Mr. Middleton has invented novel devices, systems and methods enabling parties with little trust or no trust in each other to enter into and enforce value transfer agreements conditioned on input from or participation of a third party and/or data source, over arbitrary distances, without special technical knowledge of the underlying transfer mechanism(s).

12.      Mr. Middleton has obtained intellectual property protection of his invention in the U.S. by

the '566 Patent.

13.    Mr. Middleton has exclusively licensed all substantial rights to his '566 Patent, including the right to sue third parties for infringement of his '566 Patent, to Veritaseum. The '566 Patent that Mr. Middleton has been awarded, now exclusively licensed to Veritaseum, is the utility patent as described below.

14.    On December 7, 2021, the '566 Patent, entitled "DEVICES, SYSTEMS, AND METHODS FOR FACILITATING LOW TRUST AND ZERO TRUST VALUE TRANSFERS", was duly and legally issued to inventors Reginald Middleton and Mathew Bogosian, duly and legally assigned to Mr. Middleton and then exclusively licensed Veritaseum.

15.    Cybavo is a subsidiary of Circle Ltd, is located in Taiwan, and provides services including Cybavo Vault and Cybavo Wallet aiding users of distributed ledger networks tools to secure, protect, and manage digital assets. The Taiwan subsidiary Cybavo operates under the control and direction of Circle Ltd.

16.    Circle, Ltd. also owns subsidiaries Circle Internet Financial, LLC and Circle Internet Holdings, Inc., both U.S. entities and located at 99 High Street, Suite 1701, Boston MA 02110. The U.S. subsidiaries Circle Internet Financial, LLC and Circle Internet Holding, Inc. operate under the control and direction of Circle Ltd.

17.    On October 19, 2022 Plaintiff sent Defendants a letter providing explicit notice to Defendants of Defendants' infringement of the '566 Patent. (*see* Ex. 2).

18.    Defendants had prior knowledge, should have known, or at least been willfully blind of the '566 Patent. Defendants have been on notice of the '566 Patent at least as early as October 19, 2022 by the October 19, 2022 letter or at least as early as September 22nd, 2022-by the action filed by Plaintiff against Circle's primary revenue generating USDC-issuance partner, Coinbase Global,

4

Inc. with whom Circle administers their USDC product (reference https://www.centre.io/#:~:text=Founded%20by%20Coinbase%20and%20Circle,the%20future%2 0digital%20financial%20ecosystem). (Veritaseum Capital, LLC v. Coinbase Global, Inc. U.S. District Court Delaware, Case No. 1:22-cv-01253-MN)

19.    Defendants have placed and continues to place infringing products and services into the stream of commerce, with the knowledge or understanding that such products and services are sold and used in this District. Defendants have also recruited and continues to recruit Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

20.     Defendants have conducted substantial portions of their business in this District and has made, used, offered and sold and continues to make, use, offer and sell its infringing products and services in this District.

A.    **Summary of the Claimed Invention and Background**

21.    As per the '566 Patent the claimed invention provides a computing device, system and method in which a transaction (i.e. crypto payment, trading, staking, etc.) between a first client device and a second client device can be processed via a transfer mechanism which includes a decentralized digital currency. The decentralized digital currency includes a distributed ledger that enables processing the transaction between the first client device and the second client device without the need for a trusted central authority.

22.    As per the "566 Patent the claimed invention includes a memory for storing an asymmetric key pair, a network interface for receiving terms of the transaction (i.e. principal data, a reference to a data source, an expiration timestamp, etc.) and processor, coupled to the memory and the network interface, that conducts processing operations on the asymmetric key pair and the terms of the transaction, including computing a cryptographic signature, creating an inchoate data record

5

and publishing the inchoate data record to at least one of the first client device or the second client device.

23.     Further, as per the "566 Patent the claimed invention provides that the inchoate data record is used by at least one of the first client device or the second client device to create a complete data record and to create the transaction by broadcasting the complete data record for transmitting and receiving among network participants in the computer network for recording in the distributed ledger. Also, at least one of the first client device or the second client device signs the inchoate data record and saves a copy of the inchoate data record on at least one of the first client device or the second client device.

24.     In addition, at least one of the computing device, the first client device, or second client device, verifies the recording of the complete data record in the distributed ledger by observing an external state.

25.     According to one of the embodiments of Mr. Middleton's invention the computing device (i.e. "Facilitator", "Validator") can include some or all aspects of a client device. For example, part or all of a client device's data store, the ability to initiate or accept offers, etc., could be "embedded" in the facilitator, thereby enabling the facilitator to operate as a client device itself (e.g., one controlled by the owners of the facilitator, or on behalf of a third party who has entrusted control to the facilitator). (*see* col. 9, lines 43-50 of the "566 Patent).

26.     According to another one of the embodiments of Mr. Middleton's invention aspects of each of embodiments above may be commingled. For example, the first client device could transmit the offer to the facilitator, where the second client device could find and retrieve it.

27.     Thus, aspects of one or both of the first client and the second client could coincide with the facilitator allowing many steps to be omitted as redundant where the facilitator is entrusted to act

as a proxy for or on behalf of one of the first party and the second party. The facilitator could contain aspects of one of the clients, but not the other, in which case the extra-facilitator client would optionally independently validate transaction records it received from the facilitator before signing them, etc. (*see* col. 20, lines 42-54 of the "566 Patent).

28.    Mr. Middleton's invention is applicable to both Proof-of-work ("POW") blockchains and Proof-of-Stake ("POS") blockchains.

29.    POW blockchains require miners (i.e. validators) to show they "worked" on checking data before adding it to the chain. Bitcoin is the first POW blockchain and the most popular one using a consensus mechanism. Miners use supercomputers, Application-Specific Integrated Circuit (ASIC) machines, to calculate data coming in as mathematical puzzles. The first miner to successfully validate a new block of data receives a block reward.

30.    Circle and Cybavo each has operated and continues to operate both PoW and PoS nodes, whose transactions are both covered under the Middleton Patent.

31.    Mr. Middleton's Patent covers transactions conducted by miners on POW blockchains such as Bitcoin and Ethereum, pre-merge.

32.    Ethereum which began as a POW blockchain, completed on August 10, 2022 the Goerli public testnet merge — its final trial before making the migration from a POW to a POS blockchain. Ethereum completed the Merge on or around September 15, 2022, thereby completing the migration to a POS blockchain ("ETH2").

33.    POS blockchains require users to stake a specific amount of the ledger's native token to become validators. Although the system chooses Validators randomly, the chosen validator only receives a reward if its produced block is added to the blockchain (i.e. 2/3 or more of validators

attest the produced block is correct). Some of the most popular PoS blockchains include Ethereum and Solana.

34.     Ethereum is implementing a multi-phased upgrade, including the current Eth2 upgrade, that aims to improve the Ethereum network's scalability and security through several changes to the network's infrastructure—most notably, the switch from a POW consensus mechanism to a POS model.

35.     Mr. Middleton's Patent covers transactions conducted by Validators on POS blockchains such as Ethereum which implement the Eth2 upgrade on each of the Circle or Cybavo computing device including the payment of block rewards to new validators under proof of stake, transfer of USDC from a hot wallet managed by Circle to either an external address or another hot wallet account managed by Circle, USDC transfers, minting and cold storage, payout swaps between USDC, BTC, ETH and MATIC from a hot wallet managed by Circle, payout swaps between USDC, BTC, ETH and MATIC from a hot wallet managed by the Circle Platform and USDC cross-chain swap using Circle as the intermediary.

36.     A blockchain Validator is a network node that helps process and validate transaction blocks on the platform so that they can be added to the permanent ledger of the blockchain. The term "Validator," is presumed to be a node validating transactions on a PoS blockchain in contrast to a Miner on a POW blockchain. Validators on POS blockchains such as Ethereum which implement the Eth2 upgrade perform unique process in conducting transaction including the Staking process.

37.     Validators are the key consensus party in Eth2. They are required to perform a range of useful tasks — and if they perform their duties correctly and add value to the network, they earn rewards. Validators in Eth2 are rewarded for proposing blocks, getting attestations, and

whistleblowing on protocol violations. (In Phase 0, things are a little simpler as whistle-blower rewards are folded into the proposer function).

38.     A stablecoin is a cryptocurrency token intrinsically tied to the value of a fiat currency or commodity or asset value. In the case of Circle's primary product – USDC – it is tied to the US dollar.

### B.    Circle Products and Services and Their Functions

39.     Circle through its subsidiary Cybavo's Staking and Cold Storage Service and Operated Public Validators allows for Circle and its clients and customers to conduct transactions (i.e. crypto payment, trading, swapping, staking, etc.) between persons and entities using a distributed ledger (i.e. the Ethereum, Tron, Arbitrum, Solana, Stellar, etc.) that infringes the claims of the '566 Patent. In addition Circle issues USDC by selling tokens for consideration in the form of BTC, ETU and USD. Circle also partners with Coinbase to store USDC in cold storage.

40.     Circle runs blockchain infrastructure as a service through its subsidiary Cybavo (Circle purchased Cybavo on or about June 2022, (https://www.cybavo.com/news/)) and its US-based Cloud platform (https://www.Circle.com/cloud). The largest part of that service is running Ethereum Validator nodes for newly implemented proof of stake Validator system for the benefit of its own addresses and that of its clients.

41.     The Circle blockchain infrastructure as service offerings, including its Ethereum Validator nodes for POS validator systems and cold storage, infringe the claims of the '566 Patent by providing products and services including the payment of block rewards to new Validators under POS, minting of USDC tokens, transferring of USDC tokens from one party to another party on the Circle computing device, bridging of USDC tokens from one blockchain platform to another,

Crypto Payout Swaps between USDC, BTC, ETH and MATIC from a hot wallet managed by Circle and USDC cross-chain swap using Circle as the intermediary.

42.    Circle hosts and controls Eth2 Validators via its cloud service, referencing their subsidiary Cybavo's website page titled "CYBAVO Ethereum 2.0 Staking Service with the header "Cybavo, A Circle Company" (https://www.cybavo.com/eth2-staking/).

43.    The Circle Eth2 Validators infringe the claims of the '566 Patent by providing products and services including the payment of block rewards to new Validators under POS, payment of Validators from the transfer of USDC from one Circle owned and/or controlled hot wallet to another on the Circle computing device.

44.    A substantial portion of the Defendants' revenues are derived from the income generated from the sales and management of USDC and fees generated from its customer's use of Defendants' blockchain infrastructure. The Defendants not only install and manage its cloud-based blockchain infrastructure to support the generation of this income and these fees, but it also acts on behalf of its clients in their use of Defendants' blockchain infrastructure-as-a-service.

45.    Defendants make, use, sell and/or support infringing products and services on the Ethereum, Solana, Polygon, Algorand, Avalanche, Flow, Hadera, Stellar and TRON platforms.

46.    Defendants have engaged in actions that have directly and indirectly infringed the '566 Patent.

47.    For the '566 Patent, Defendants directly infringe the '566 Patent by making, using, selling, offering to sell, and/or importing infringing products and services into the United States.

48.    For the '566 Patent, Defendants have contributorily infringed the '566 Patent by offering to sell or selling within the United States or importing into the United States products and services constituting a material part of the claimed invention, knowing the same to be especially made or

adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

49.     For the '566 Patent, Defendants have induced infringement of the '566 Patent by encouraging acts of direct infringement, when Defendants knew or should have known it was inducing direct infringement.  Defendants' acts of encouragement include but are not limited to (a) selling to, supplying to, encouraging and/or supporting Defendants' customers to use its infringing products and services, and (b) selling to, supplying to, encouraging, and/or instructing third parties how to use certain Circle products and services.

**CLAIM FOR RELIEF**
**Infringement of the '566 Patent**

50.     Plaintiff repeats and re-alleges the allegations of the above enumerated paragraphs as if fully set forth herein.

51.     Defendants have infringed and continues to infringe, directly and/or indirectly under the doctrine of equivalents, one or more claims of the '566 Patent,  in violation of 35 U.S.C. § 271(a), (b), (c), (f) and/or (g); at least by making, using, selling, offering to sell and/or importing products and services in the United States (and/or contributing to and/or inducing others to do the same).

52.     Defendants' infringing activities include but are not limited to its websites at https://www.Circle.com/ and (https://www.cybavo.com), and the functions conducted by said websites in response to inputs by Circle's customers, Circle Android mobile wallet at https://play.google.com/store/apps/details?id=com.circle.invest&hl=en_US&gl=US    and    iOS mobile wallet at https://apps.apple.com/us/developer/circle-internet-financial-llc/id920164001, its Circle    Cybavo    APIs    https://www.cybavo.com/developers/    and    Cybavo    site (https://www.cybavo.com/),    it's    EuroCoin    (EUROC),    Circle    APIs    (https://app-sandbox.circle.com/signup/sandbox),    Validator    software,    Circle    Pay

(https://support.circle.com/hc/en-gb/articles/212059246--What-is-Circle-Pay-), Circle Wallet and Circle Operated Public Validators.

53.     Circle has directly and/or indirectly infringed at least claims 1. 2, 3, 4 and 6 of the '566 Patent as set forth in the '566 Patent Circle Claim Chart. (*see* Ex. 3).

54.     Circle infringes the claimed invention, by its websites, Circle Cloud and mobile applications, its Circle Cloud, Circle APIs, Cybavo blockchain infrastructure-as-a-service offerings, Circle Pay, Circle Wallets, USDC and other stablecoin products and services, and Circle Operated Public Validators.

55.     Circle by the above-described products and services allows the onboarding, storing, trading, lending, borrowing, staking and transferring on several cryptocurrency platforms, including Ethereum, Solana, Polygon, Algorand, Avalanche, Flow, Hadera, Stellar and TRON platforms, all according to the claimed invention.

56.     Specifically, Circle offers products and services including Circle Cloud, Circle APIs, Circle mobile applications, its Cybavo blockchain infrastructure-as-a-service offerings, Circle Pay, Circle Wallets, USDC and other stablecoin products and services, and Circle Operated Public Validators. that infringe the invention claimed in claims 1. 2, 3, 4 and 6 of the '566 Patent.

57.     As set forth in the Circle '566 Patent Claim Chart (*see* Ex. 3), the contents of which are incorporated herein by reference, claims 1, 2 and 3 of the '566 Patent are infringed by Circle payment of block rewards to new Validators under POS. Claims 1 and 2 of the '566 Patent are infringed by Circle's USDC transfers and services. Claim 4 is infringed by the minting of USDC from a Circle Account. Claims 1 and 2 are infringed by Circle making USDC available via the USDC smart contract hosted on Ethereum Validator Nodes. Claims 1, 2 and 6 are infringed by Crypto payout swaps between USDC, BTC, ETH and MATIC from a hot wallet managed by the

Circle Platform. Claims 1, 2 and 6 are infringed by USDC cross-chain swaps using Circle as the intermediary.

58.    The Computing Device is the combination of computers, servers and/or virtual machines supporting and enabling the Circle Accounts (https://www.circle.com/en/circle-account) and the Circle API (https://developers.circle.com/developer/docs/introducing-circle-apis) functionality. Referred to herein as the 'Circle Platform'

59.    As an exemplary of infringement independent claim 1 of the '566 Patent provides a computing device for processing an inchoate (incomplete) transaction originated by a first client device, to be completed by a second client device using a data source and a transfer mechanism; the transfer mechanism comprising a decentralized digital currency which corresponds, for example, to the Validators, Validator systems, and Infrastructure-as-a-Service packages sold, offered and offered for sale by Circle.

60.    The Computing Device/Facilitator includes the Circle (Owned, managed) Ethereum Validator Full Nodes; and the Circle (Owned, managed) Ethereum supporting Archive Nodes and Light Nodes; and the First Client is an active Circle (Owned, managed) Ethereum Validator Full Nodes. The Computing Device and the First Client are the same device. The Second Client is a prospective Validator Node, which will include any prospective Circle (Owned, managed) Ethereum Validator Nodes. (*see* Ex. 3).

61.    According to the claimed invention the computing device includes a memory for storing terms such as a first asymmetric key pair which includes a first private key and a first public key, a network interface for receiving terms including at least one of a first principal data or a second principal data, a reference to at least one of a first data source or a second data source and an

expiration timestamp; and a computer processor, coupled to the memory and the network interface, for processing the terms and the asymmetric key pair.

62.    Circle provides the computing device as claimed (i.e. the device, first and second clients) by client software that Circle provides, installs and/or operates in combination with servers and other computing devices operated by Circle through its Cybavo Eth 2.0 Staking service and infrastructure. The Circle operated, offered and/or facilitated Validator devices include memory which operates in combination with Circle servers and other computing devices. (see Ex. 3). The network interface is provided by the Validator Node device(s). The computer processor is the actual processing device (i.e. Intel, AMD, etc.) in the Validator Node device that operates in combination with Circle servers and other computing devices that execute the instructions of the software. (*see* Ex. 3).

63.    The Computing Device is the Circle Cybavo Cloud System that includes Eth2 Clients and Validators. The Computing Device, as the Circle Cybavo Cloud System, facilitates value transfer to the new Validator (as Second Clients) based on work performed in producing blocks securely. The new Eth2 Validator will perform work as a block producer, attester and aggregator as assigned by the network.

64.    First Client Device - The Computing Device and the First Client are both considered to be the node(s) in Circle Cloud.

65.    Second Client Device - The prospective Validator Node which will become part of the Ethereum Network is considered as the Second Client.

66.    The first asymmetric key pair is generated by, for example, the Circle prospective Validator Node as it attempts to be nominated as part of the Ethereum network. For making the 32 ETH

deposit, 2 key pairs and a Json file with the necessary information stored in the validator's memory are created, so as to interact with the Eth2 mainnet contract through a transaction. (see Ex. 3).

67.     The first principal data corresponds, for example, to the 32ETH staked in the ETH2 deposit contract by a Party proposing to become a Validator in the Ethereum Network through the Circle cloud and/or the Blochchain Infrastrcuture as a service product,. (see Ex. 3)

68.     The second principal data corresponds, for example, to the Circle Cloud, as part of the Ethereum network, calculating the validator rewards and subsequently updates the Validator account at the end of each epoch. This is calculated from the Ethereum Network reward and penalty algorithm (Data Source) and considers the staked principle. (see Ex. 3).

69.     The Ethereum Network calculates the validator rewards and subsequently updates the Validator account at the end of each epoch. Said epoch is the expiration timestamp referred to by the claims. (*see* Ex. 3).

70.     According to the claimed invention the Circle computing device is configured to read the first private key from the memory; compute a first cryptographic signature from the first private key; create an inchoate data record; and publish the inchoate data record to at least one of the first client device or the second client device.

71.     In the Circle products and services the computing device reads the first private key from the memory by the hardware device, hosting the Client software/libraries (used by an App), such as an ETH2 client or validator node, reading from memory the private key of the user.  The App requires the user to authenticate themselves using a private key of the user via a Wallet before using the App. (*see* Ex. 3).

72.     In Circle products and services the computing device creates an inchoate data record by the First Client which creates a Complete Data Record and signs the record. (*see* Ex. 3).

73.    In Circle products and services the computing device publishes the inchoate data record to at least one of the first client device or the second client device via a Complete Data Record that was created and signed by the first client. (*see* Ex. 3).

74.    The claimed invention operates using decentralized digital currency which includes a distributed ledger that enables processing the transaction between the first client device and the second client device without the need for a trusted central authority. The Circle products and services also operate using decentralized digital currency such as Ether on the Ethereum network which maintains a distributed ledger without the need for a trusted central authority. (*see* Ex. 3).

75.    In the claimed invention the inchoate data record is used by at least one of the first client device or the second client device to create a complete data record and to create the transaction by broadcasting the complete data record for transmitting and receiving among network participants in the computer network for recording in the distributed ledger same as the Circle products and services. (*see* Ex. 3).

76.    In the claimed invention at least one of the first client device or the second client device signs the inchoate data record and saves a copy of the inchoate data record on at least one of the first client device or the second client device. This feature is conducted by the Circle products and services, particularly the Circle validators. (see Ex. 3).

77.    In the claimed invention, at least one of the computing device, the first client device, or the second client device verifies the recording of the complete data record in the distributed ledger by observing an external state. This feature is conducted by the Circle products and services particularly the Circle validators. (*see* Ex. 3).

78.    Circle products and services, particularly the Circle Validators infringe each of claims 1-3 of the '566 Patent. (*see* Ex. 3).

79.     Circle's USDC stablecoin product infringes Claim 1 and 2 of the '566 Patent. (*see* Ex. 3) during transfers.

80.     Circle's stablecoin offering infringes Claim 4 of the '566 Patent. (*see* Ex. 3) during minting of USDC from a Circle Account.

81.     Circle infringes Claims 1 and 2 of the '566 Patent. (*see* Ex. 3) when making available USDC via the USDC smart contract hosted on Ethereum Validator Nodes.

82.     Circle infringes Claims 1, 2 and 6 of the '566 Patent. (*see* Ex. 3) through its "Crypto Payout Swaps" between USDC, BTC, ETH and MATIC from a hot wallet managed by Circle and/or the Circle Platform

83.     Circle infringes Claims 1, 2 and 6 of the '566 Patent. (*see* Ex. 3) through its USDC cross-chain swap using Circle as the intermediary.

84.     Circle's continuing actions as alleged herein are inducing infringement of the '566 Patent by encouraging acts of direct infringement, and Circle knows or should have known it is inducing direct infringement by (a) selling to, supplying to, encouraging, helping design, and/or supporting Circle's customers to use its infringing products and services.

85.      Circle's continuing actions as alleged herein are contributorily infringing the '566 Patent by offering to sell within the United States or importing into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the claimed invention(s) of the '566 Patent, knowing the same to be especially made or adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

86.     Plaintiff submits that Defendants have gained substantial revenues by virtue of its infringement of the '566 Patent.

87.    Plaintiff has sustained damages as a direct and proximate result of Defendants' infringement of the '566 Patent.

88.    Plaintiff will suffer and is suffering irreparable harm from Defendants' infringement of the '566 Patent. Plaintiff has no adequate remedy at law and is entitled to an injunction against Circle's continuing infringement of the '566 Patent. Unless enjoined, Circle will continue its infringing conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Veritaseum respectfully seeks the following relief:

A.    Declare that Circle has infringed one or more claims of the '566 Patent.

B.    Enter a preliminary and permanent injunction prohibiting Circle, its subsidiaries, divisions, agents, servants, employees, and all those acting in concert with and/or who are in privity with Circle and/or any of the foregoing from infringing, contributing to the infringement of, and/or inducing infringement of the Patents in Suit, and for all further proper injunctive relief;

C.    Award to Plaintiff Veritaseum at least $350,000,000 in damages for Circle's infringement, with pre-judgment and post-judgment interest, damages, as well as enhanced damages, including costs (including expert fees), disbursements, and reasonable attorneys' fees incurred by Plaintiff in this action, pursuant to 35 U.S.C. §§ 284-285, finding this to be an "exceptional" case; and

D.    Grant any and all such further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure on all issues so triable.

Dated: December 29, 2022

**BRUNDIDGE & STANGER, P.C.**

By:  */s/ Carl I. Brundidge*
     Carl I. Brundidge
     David E. Moore
     1925 Ballenger Avenue #560
     Alexandria, VA 22314
     Telephone: +1 (703) 684-1470
     cbrundidge@brundidge-stanger.com
     david.moore@brundidige-stanger.com
     ***Counsel for Plaintiff***